SO ORDERED: October 25, 2007.

_____
**Basil H. Lorch III
United States Bankruptcy Judge**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PAUL EDWARD GIBSON | ) | CASE NO. 07-90752-BHL-13 |
| | ) | |
| Debtor. | ) | |

### ORDER

This matter comes before the Court on Citifinancial Auto Corporation's ("Citifinancial") **Objection to Chapter 13 Plan** filed on May 30, 2007. A **Brief in Opposition** was filed on August 3, 2007 by the Trustee. A hearing on Citifinancial's objection was held on August 14, 2007, at which time the Court granted the parties additional time to file supporting briefs.

Paul Edward Gibson ("Gibson") filed a Chapter 13 petition on April 23, 2007. In his Chapter 13 plan, also filed April 23, 2007, Gibson proposed to pay Citifinancial $11,879.00, plus interest at 8.75%, on a 2005 Chevrolet Impala. Citifinancial's proof of claim, filed April 30, 2007, alleges the total amount owed on the loan is $18,484.61. Gibson obtained a loan on the

1

Impala on or about July 30, 2005, in the amount of $20,326.86, plus interest at 14.95% annually. The sales contract indicates that part of the loan was used to pay $2,321.94 for negative equity on a 2001 Ford Taurus traded in by Gibson, $420.00 on Gap Insurance, $2,035.98 on Credit Life and Credit Disability Insurance, and a $3.00 filing fee. Citifinancial's loan is secured by a lien on the title to the vehicle.

Citifinancial objected to the proposed plan, asserting that its claim was subject to treatment under the "hanging paragraph" at the end of 11 U.S.C. § 1325(a). It states:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day [period][1] preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if that debt was incurred during the 1-year period preceding that filing.

Prior to the enactment of BAPCPA in 2005, pursuant to 11 U.S.C. § 506 a secured creditor's claim could be bifurcated into secured and unsecured portions, depending on the value of the collateral securing the debt. These claims were then "crammed down" to the value of the collateral. The "hanging paragraph" of §1325(a) prevents this cram down if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day period preceding the date of the filing of the petition, and the collateral for the debt is a motor vehicle purchased for the personal use of the debtor. The parties do not dispute that the motor vehicle was purchased within the 910-day period preceding the filing date or that it was for the personal use of the debtor. At issue in the present matter is whether or not Citifinancial has a purchase-money security interest in the vehicle, and if so, for

---

[1] The word "period" was probably omitted inadvertently in the 2005 Act.

how much.

The term "purchase money security interest" used in the "hanging paragraph" of §1325(a) is not defined in the Bankruptcy Code.  Therefore "[w]hether a creditor has a purchase-money security interest securing a debt is a matter of state law." *In re Vega*, 344 B.R. 616,622 (Bkrtcy.D.Kan.2006).  The Indiana Uniform Commercial Code (U.C.C.) states:

> A security interest in goods is a purchase-money security interest:
>    (1) to the extent that the goods are purchase-money collateral with respect to that security interest;

I.C. §26-1-9.1-103(b).  Necessary to the definition of "purchase-money security interest" are the definitions of "purchase-money collateral" and "purchase-money obligation."

> (1) "Purchase-money collateral" means goods or software that secures a purchase-money obligation incurred with respect to that collateral.
> (2) "Purchase-money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in, or the use of the collateral if the value is in fact so used.

I.C. *§*26-1-9.1-103(a)(1) & (2).  The Official Comments that relate to these provisions provide useful insight as to what types of obligations are included.  Official Comment 3 states:

> "Purchase-Money Collateral"; "Purchase-Money Obligation"; "Purchase-Money Security Interest." Subsection (a) defines "purchase-money collateral" and "purchase-money obligation."  These terms are essential to the description of what constitutes a purchase-money security interest under subsection (b).  As used in subsection (a)(2), the definition of "purchase-money obligation," the "price" of collateral or the "value given to enable" includes obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorney's fees, and other similar obligations.
>
> The concept of "purchase-money security interest" requires a close nexus between the acquisition of collateral and the secured obligation.  Thus, a security interest does not qualify as a purchase-money security interest if a debtor acquires property on unsecured credit and subsequently creates the security interest to secure the purchase price.

3

Citifinancial contends that the money advanced to pay the gap insurance, the credit life and credit disability insurance, and the negative equity relating to the vehicle trade-in fall within the definition of a "purchase money obligation," and thus give rise to a "purchase-money security interest." Several courts with similar U.C.C. provisions have examined this issue and the majority have concluded that funds advanced for these purposes do not give rise to a "purchase-money security interest." *In re Vega*, 344 B.R. 616 (Bkrtcy.D.Kan.2006); *In re Price*, 363 B.R. 734 (Bkrtcy.E.D.N.C.2007); *In re Pajot*, 371 B.R. 139 (Bkrtcy.E.D.Va.2007); *In re Westfall*, 365 B.R. 755 (Bkrtcy.N.D.Ohio.2007); *In re Acaya*, 369 B.R. 564 (Bkrtcy.N.D.Cal.2007); and *Citifinancial Auto v. Hernandez-Simpson*, 369 B.R. 36 (D.Kan.2007).

The Court finds that the funds advanced to pay off the negative equity on the Ford Taurus are not part of the purchase price. "The funds loaned to satisfy the negative equity are 'not a component of the price of the collateral or the value given to enable the debtor to acquire rights in the collateral,' and are significantly and qualitatively different from the fees, freight charges, storage costs, taxes, and similar expenses that are typically part of an automobile sale." *In re Price*, 363 B.R. at 741. The Court also finds that the funds advanced for gap insurance, credit life and credit disability insurance are not part of the purchase price. These types of insurance are neither mandatory components of the loan agreement, nor a value-enhancing add-on, and are thus dissimilar to the examples listed in the Official Comment to the Indiana statute defining a purchase money security interest. *Id.*

Consequently, Citifinancial does not have a purchase money security interest for the full amount of its claim.

When a security interest includes components that relate to the purchase of the collateral

4

>and components that do not, the extent of the secured creditor's purchase money security interest is determined by the application of either the dual status or transformation rule. Under the dual status rule the secured lender has a purchase money security interest to the extent that the amount financed relates to the purchase price, but under the transformation rule the secured creditor has no purchase money security interest because the non-purchase money component transforms the entire claim into a non-purchase money security interest.

*Id*. At 745. The Indiana U.C.C. mandates a dual status rule for non-consumer-goods transactions. *I.C.* 26-1-9.1-103 (Official Comment 7a). However, where the collateral is a consumer good, such as in this case, it is within the Court's discretion to apply either the dual status or transformation rule. "Under subsection (h), the limitation of subsections (e), (f), and (g) to transactions other than consumer-goods transactions leaves to the court the determination of the proper rules in consumer-goods transactions." *I.C.* 26-1-9.1-103 (Official Comment 8). The Court determines that the dual status rule is appropriate for consumer-goods transactions as well, and will apply it in this matter.

Citifinancial has a purchase-money security interest on the 2005 Chevrolet Impala to the extent of only the vehicle price. Accordingly, 11 U.S.C. §1325(a) applies only to the funds advanced toward the vehicle price. It does not apply to funds advanced for the negative equity on the trade-in, or on the gap, credit life, and credit disability insurance. According to Citifinancial's proof of claim, the debt at the time of the petition was $18,484.61. After subtracting from that figure the negative equity on the trade-in and all of the insurance premiums, the vehicle price at the time of filing was $13,706.69, which is the amount of the purchase-money security interest Citifinancial holds on the Impala. Therefore, the "hanging paragraph" of §1325(a) applies only to $13,706.69 of Citifinancial's claim.

Finally, Citifinancial claims that it is entitled to interest on its secured claim. Debtors are

5

"required to provide interest on the secured claim at a rate that started with the national prime rate, with an adjustment for risk of non-payment." *Citifinancial Auto v. Hernandez-Simpson*, 369 B.R. 36, 41 (D.Kan.2007). This formula is typically referred to as the "Till rate." The present national prime rate is 7.75%. With an adjustment of 1.5%, Citifinancial is entitled to interest in the amount of 9.25% on its secured claim.

      Accordingly, the Court finds that Citifinancial has a purchase money security interest on the 2005 Chevrolet Impala in the amount of Thirteen Thousand Seven Hundred and Six Dollars and Sixty-Nine Cents ($13,706.69). Since Gibson only included $11,879.00 in his plan, Citifinancial's objection to confirmation of the plan is **Sustained.** The debtor is hereby ordered to prepare an amended plan that reflects Citifinancial's purchase-money security interest plus interest at 9.25%.

# # #

Distribution:

David C. Ollis
P.O. Box 846
Seymour, IN 47274

Lloyd Koehler
400 Pearl Street, Suite 200
New Albany, IN 47150

Harley K. Means
Chase Center/Circle
111 Monument Circle, Suite 900
Indianapolis, IN 46204-5125

U.S. Trustee
101 W. Ohio St., Suite 2000
Indianapolis, IN 46204